UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ESTELLA MALDONADO,

                                                                      13-CV-05856 (ILG)(JO)

                     **Plaintiff,**

     -against-

FARAJ SROUR, an individual, and
TITA SROUR, an individual,

                     **Defendants.**
-------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
TO THEIR MOTION TO LIMIT OR TERMINATE PLAINTIFF'S DEPOSITION
QUESTIONS**

## PRELIMINARY STATEMENT

Defendants, Faraj Srour and Tita Srour, respectfully submit this reply memorandum of law in support for their motion to preclude Plaintiff Estella Maldonado from inquiring into their financial assets at their depositions.

Plaintiff should be prohibited from questioning Defendants about their assets as such information is wholly irrelevant to Plaintiff's claim for unpaid wages and are solely meant to unreasonably harass, annoying, embarrass and oppress Defendants in violation of FRCP (30)(d)(3).

There is a time and place for Plaintiff's inquiry about Defendants' assets. This is neither the time nor the place. Such discovery can and should be relegated to post-judgment discovery (if any is needed).

## FACTS

Plaintiff, Estella Maldonado, filed a complaint for unpaid wages. Plaintiff has been Defendants' housekeeper from 1989 to present.

On September 10, 2014, Mr. Faraj Srour ("Mr. Srour") was deposed by Plaintiff. During the deposition, Plaintiff asked irrelevant and harassing questions concerning Mr. Srour's ownership interest in various companies and real estate. (Relevant parts of Mr. Srour's deposition are attached to the affirmation of Joseph M. Labuda as Exhibit "A". See pp. 29-30.) Defendants objected to the inquiry into Mr. Srour's financial assets on the ground that such information was completely irrelevant to Plaintiff's claim for unpaid wages and was improperly asked in bad faith to annoy and harass the deponent.

1

As a result, during the course of the deposition, the parties telephoned Magistrate Judge Orenstein. Judge Orenstein directed Mr. Srour to answer Plaintiff's questions unless he was asserting a privilege. Defendants indicated their intention to seek further judicial review on this issue and preserved their right not to answer any such questions and present a motion under F.R.C.P. Rule 30(d)(3). On September 24, 2014, Defendants submitted the instant motion. As fully outlined below, the Court should grant Defendants' motion and enjoin Plaintiff from inquiring about Defendants' financial and other assets.

## ARGUMENT

**i.    Standard**

As noted above, Defendants filed this motion pursuant to F.R.C.P. 30(d)(3).[1] However, in her opposition, Plaintiff cites to F.R.C.P. 72 which deals with objections to a magistrate's order. Pursuant to Rule 30(d)(3), Defendants are first required to file a written motion. Based on Judge Orenstein's oral ruling prior to any written motion, Defendants filed the instant motion in Your Honor.

Under either Rule 30(d)(3) or Rule 72, the Court should prohibit Plaintiff from inquiring about Defendants' assets. The Rule 30(d)(3) standard is fully outlined in Defendants' initial motion papers dated September 24, 2014.

Pursuant to Rule 72(a), a Magistrate Judge's order will be set aside if any part of the order is "clearly erroneous or is contrary to the law." A finding is clearly erroneous when the evidence as a whole provides the reviewing court a conviction that an error has been made, even if there was evidence to support the Magistrate Judge's order. See Defazio v. Wallis, 459 F.

---

[1] Pursuant to Fed. R. Civ. P. Rule 30(c)(2), counsel may instruct a deponent not to answer in order to file a motion under Rule 30(d)(3). Rule 30(d)(3) provides that "the deponent…may move to terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent..." Further, Rule 30(d)(3) states that a motion may be filed in the court where the action is pending.

Supp. 2d 159, 163 (E.D.N.Y. 2006); see also United States v. 281 Syosset Woodbury Rd., 862 F. Supp. 847, 860 (E.D.N.Y. 1994). Likewise, "[a]n order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." See Defazio, 459 F. Supp. 2d at 163. Here, Judge Orenstein's ruling that Mr. Srour must answer questions about his assets is contrary to law for a number of reasons.

First, Defendants should have been given the opportunity to file a written motion on the issue pursuant to Rule 30(c)(2).  The rationale behind the Rule is to give the parties the time and opportunity to fully articulate their positions and submit supporting case law so that the Court can make an informed decision based on legal precedent which is a cornerstone to our entire judicial system.

**ii. Plaintiff failed to show any valid circumstance (let alone any extraordinary circumstance) to allow access to Defendants' assets.**

Second, pre-judgment inquires concerning parties' assets are prohibited absent extraordinary circumstances.  In fact, Judge Koeltl recently ruled on this exact issue on a case squarely on point with the present case.  In denying plaintiff's overly broad and intrusive discovery requests, Judge Koeltl held that "the plaintiffs have not come close to showing good cause for the extraordinary remedy of pre-judgment discovery of assets." Vincent v. Money Store, 2012 U.S. Dist. LEXIS 181107 (S.D.N.Y. Dec. 20, 2012).  "[C]ourts will not permit pre-judgment discovery of a party's financial condition unless that condition is relevant to a claim or defense at issue." St. Paul Commodities, LLC v. Crystal Creek Cattle, 2012 U.S. Dist. LEXIS 108192 at * 12 (N.D. Tex. August 1, 2012) citing Sierrapine v. Refiner Products Manufacturing, Inc., 275 F.R.D. 604, 609-10 (E.D. Cal. 2011); Lincoln Elec. Co. v. MPM Techs., Inc., 2009

3

U.S. Dist. LEXIS 68421, 2009 WL 2413625, at *3 (N.D. Ohio Aug. 5, 2009) (concluding that defendant's financial records were not relevant to resolving a breach of contract action and thus were not discoverable); Mack Boring & Parts Company v. Novis Marine, Ltd., 2008 U.S. Dist. LEXIS 98479, 2008 WL 5136955, at *3 (D. N.J. Dec. 5, 2008)(concluding that a "garden variety breach of contract action" did not entitle the plaintiff to financial discovery).

  Here, Plaintiff asserts that she only seeks information on Defendants' assets in order to establish willfulness. Plaintiff aptly acknowledges that in order to establish willfulness, an employer must either know or show reckless disregard for whether the conduct was prohibited. See Kernel v. Black & Decker, 643 F. 13d, 352, 366 (2d Cir. 2011). However, ownership of a business or real estate has absolutely nothing to do with an employers imputed knowledge or reckless disregard of the law. In fact, Plaintiff does not cite to a single case for her flawed "willfulness" proposition. Plaintiff's willful argument is simply a ruse to hide her (and her attorney's) true intent and motive, i.e. plaintiff wants to know if she is going to be able to collect on a judgment against the Defendants. It is that simple. Plaintiff's disingenuous argument concerning willfulness is fully exposed as a pretext when she inquired about Defendants' real estate holdings. What do real estate holdings have to do with willfulness? Nothing. As discussed above, the uncontroverted case law is that Plaintiff must wait until she obtains a judgment before she can inquire into Defendants' assets.

  During the deposition Mr. Srour answered the questions about where he previously worked, his schedule and whether he had any firsthand knowledge of Plaintiff's hours and duties See Decl. of Joseph M. Labuda, Ex. 1 at 21-27. Plaintiff had the opportunity to ask Mr. Srour directly whether he knew or had reckless disregard for his alleged FLSA obligations. In fact, Mr. Srour stated numerous times that he did not know all the requirements under the FLSA and New

4

York Labor Laws in regard to pay practices. Id. at 62, 178, 190. Specifically, Mr. Srour stated that he was not aware that he had to keep records of monies paid to employees or that these laws applied to a housekeeper in his own home. Id. at 178, 190. Yet, Plaintiff continued to hound Mr. Srour about other ownership interests. Id. at 29-30, 103-106. Plaintiff could have asked questions regarding Mr. Srour's alleged willfulness in a much less intrusive manner. Mr. Srour's ownership interests could not prove whether or not he acted willfully. There was no reason for Plaintiff to ask Mr. Srour about Srour's ownership interests. The only information relevant for willfulness in this case is that Mr. Srour did not know all the requirements of the FLSA and New York Labor Law and that the same requirement applied to housekeepers.

Plaintiff does not a single case supporting her position that she is entitled to Defendants' financial information.[2] Instead, Plaintiff argues that Defendants ownership of businesses and real estate can be used to impute willfulness. This is complete and utter hogwash.

Plaintiff does not need to know Mr. Srour's ownership interests in any real estate or businesses in order to prosecute Plaintiff's claim for unpaid wages. Discovery regarding Mr. Srour's assets are simply not relevant since that information would not help prove Mr. Srour's willfulness. See Fed. R. Civ. Pro. R. 26; See Vincent, 2012 U.S. Dist. Lexis 181107 at 3.

Therefore, Defendants' motion to preclude Plaintiff from inquiring into Mr. Srour's assets must be granted as such questions pose no relation to his knowledge of willfulness under the FLSA or any aspects of the claims or defenses at issue in the instant matter.

---

2 The only case cited by Plaintiff is Payano v. A&S Broadway Produce, S.D.N.Y. Docket No. 13-CV-863. However, Payano is easily distinguishable from the present case. In Payano, the plaintiff sought information regarding the defendant's ownership interests in other grocery stores for the purpose of seeking a class action. In that case, Judge Roman only allowed questions regarding the other stores owned by the defendant (not all of Defendants' assets) because it "could lead to information relevant to whether, inter alia, the Top Tomato stores constitute an "enterprise" under the FLSA. Id. Here, Plaintiff is a housekeeper. There is no "enterprise" issue in this case.

## **CONCLUSION**

For the foregoing reasons, Defendants request that the Court preclude from further Plaintiff harassing and annoying Defendants with irrelevant deposition questions about their financial assets and grant any further relief the Court deems just and proper.[3]

Dated: October 31, 2014
Lake Success, New York          Respectfully submitted,

/s/ Joseph M. Labuda, Esq.
Joseph M. Labuda, Esq.
MILMAN LABUDA LAW GROUP, PLLC
Attorneys for Defendants
3000 Marcus Avenue, Suite 3W8
Lake Success, New York  11042
(516) 328-8899

---

[3] In her opposition, Plaintiff also seeks a ruling on questions about Plaintiffs alien employment application. Defendants did not raise the issue in their motion papers and should not be considered by this Court. However, it should be noted that the questions Plaintiff asked regarding whether Mr. Srour signed Plaintiff's Alien Employment Application are irrelevant and were asked and answered. During his deposition, Mr. Srour repeatedly stated that he signed the application on the advice of Plaintiff's attorney. See Decl. of Joseph M. Labuda, Ex. 1 at 98, 103, 106. Moreover, Mr. Srour stated that he informed Plaintiff's lawyer that the information on the application was inaccurate, but the lawyer still advised him to sign it on Plaintiff's behalf. Id. at 98. Mr. Srour only pled his Fifth Amendment Privilege in regard to the question of whether he committed perjury. Id. at 107. A question asking Mr. Srour to perjure himself is in bad faith and is only meant to unreasonably annoy, embarrass and oppress him and should be precluded. See Rule 30(d)(3).

In her opposition papers, Plaintiff also requests the Court draw a negative inference based on Mr. Srour's assertion of his Fifth Amendment rights. Again, Defendants did not raise this issue and believe that Plaintiff has improperly raised this issue in the opposition papers but will briefly address it here.

Here, there is in fact no need for any adverse inference in this case. An adverse inference is appropriate where "the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth.'" SEC v. Durante, 2013 U.S. Dist. LEXIS 178351, 38-39 (S.D.N.Y. Dec. 19, 2013) quoting LiButti v. United States, 107 F.3d at 124. Moreover, "[b]ecause the privilege [against self-incrimination] is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." SEC v. Graystone Nash, Inc., 25 F.3d 187, 192 (3d Cir. N.J. 1994).

In this case, Mr. Srour already stated numerous times that he followed Plaintiff's lawyer's instructions to sign the Alien Employment Application, even if the information proved inaccurate. See Decl. of Joseph M. Labuda, Ex. 1 at 98, 103, 106. The fact that Mr. Srour will not admit to perjuring himself has no bearing on this case. An adverse inference will not advance the search for the truth, being that Mr. Srour has provided the necessary information regarding the application. Further, such an inference would be unfair and unnecessarily prejudice Mr. Srour when he was only following the advice of Plaintiff's counsel. Therefore, the Court should not draw an adverse inference against Defendants.